B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Thomas Briola | **DEFENDANTS**<br>Phillip Michael Search |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>John T. Asher, III<br>Spector Gadon Rosen Vinci, P.C.<br>One Logan Square, Suite 1800<br>130 N. 18th Street<br>Philadelphia, PA  19103 | **ATTORNEYS** (If Known) |

| **PARTY** (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☑ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**Plaintiff is bringing an adversary action under 11 U.S.C. Section 523(a)(2)(A)  and 11 U.S.C. Section 523(a)(4), and is objecting to discharge under 11 U.S.C. Section 727(a).**

---

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
    actual fraud
☑ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court
    if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ **$80,000.00 plus interest and costs.** |

| Other Relief Sought |
|---|
| ## Objection to Discharge under 11 U.S.C. Section 727(a) |

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Phillip Michael Search | BANKRUPTCY CASE NO.<br>25-11502 | |
| DISTRICT IN WHICH CASE IS PENDING<br>United States District Court for the Eastern District of Pennsylvania | DIVISION OFFICE | NAME OF JUDGE<br>Patricia M. Mayer |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>July 21, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>John T. Asher, III, Esquire | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No. 25-11502 |
| PHILLIP MICHAEL SEARCH | : | Chapter 7 |
| Debtor | : | |
| | : | |
| THOMAS BRIOLA, | : | Adv. No. |
| Plaintiff, | : | |
| v. | : | |
| PHILLIP MICHAEL SEARCH, | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

Plaintiff Thomas Briola ("Plaintiff") by and through his attorneys, John T. Asher, III,

Esquire and the law firm of Spector Gadon Rosen Vinci P.C., brings this adversary action against

Defendant Phillip Michael Search ("Defendant Debtor") and in support thereof aver as follows:

### Nature of the Case

1.      This is an adversary action to determine the dischargeability of a debt, and an

objection to discharge.

### Parties

2.      Plaintiff is a citizen of the Commonwealth of Pennsylvania, residing in

Philadelphia County, Pennsylvania.

3.      Defendant Debtor Phillip Michael Search is a citizen of the Commonwealth of
Pennsylvania, residing in Philadelphia County, Pennsylvania.

**Factual Background**

4.      Plaintiff and Defendant Debtor began working together in December, 2021 to
create canned craft alcoholic cocktails, which were originally called "Walktails."

5.      In December, 2021, Plaintiff began working with Defendant Debtor on creating
canned craft alcoholic cocktails, which were originally called "Walktails."

6.      In January, 2022, Defendant Debtor approached Plaintiff about going into
business with him to create, distribute and market the canned craft alcoholic cocktails they were
developing together.

7.      Excited about the opportunity to partner with Defendant Debtor in the canned
craft alcoholic beverages business, Plaintiff and Defendant Debtor proceeded to discuss and
agree to pursue the creation of such a business.

8.      Defendant Debtor had prior experience in organizing and managing businesses so
it was agreed that Defendant Debtor would be effectively the "senior" partner and would be
responsible for organizing the business and managing it. Plaintiff would invest his money and
continue to provide ideas for product creation, marketing, and intellectual property, such as
names and logos.

9.      At a meeting on March 27th, 2022 Defendant Debtor and Plaintiff agreed to work
towards getting a distiller's license to assist the business. The next day, March 28, 2022 Plaintiff
created the name "Canary Cocktails" and sketched a rough draft of a logo.

10.     On March 29, 2022, Defendant Debtor formed Comprehensive Beverage
Solutions and Canning Service, LLC ("CBS"), which was the entity that was to operate the

2

canned craft alcoholic cocktails business, and Defendant Debtor filed the organizational

documents with the Commonwealth of Pennsylvania Secretary of State.

11.      On May 3, 2022 Plaintiff invested $20,000.00 with Defendant Debtor in return for

what Defendant Debtor promised would be a 25% stake in the canned craft alcoholic cocktail

business, in which Plaintiff had been working with Defendant Search since December, 2021. In

addition, Defendant Debtor promised that CBS would hire Plaintiff and pay him a salary of

$68,000 per year.

12.      On May 13, 2022, Plaintiff became formally employed by CBS at the promised

salary of $68,000.00 per year.

13.      Defendant Debtor told Plaintiff he had another partner in CBS but that he and his

other partner would take no salary from CBS but only be paid through disbursements. Defendant

Debtor further explained that a holding company would be set up to hold ownership of CBS,

which would be the operating company, and that Plaintiff's investment would give him an

ownership interest in that holding company. Plaintiff's investment of $20,000.00 would thus give

him a 25% ownership of the holding company, what became 4theempire, LLC ("4thempire").

14.      Between May 3, 2022 and June 7, 2022, Defendant Debtor was seeking additional

investors to purchase a 40% share of the canned craft alcoholic cocktails business operated by

CBS for $350,000.00. "Canary" was then the proposed name under which CBS would conduct

the business.

15.      Wanting to own a larger part of the business, Plaintiff then offered to increase his

investment in the canned craft alcoholic cocktail business by $60,000.00, to which Defendant

Debtor agreed. This boosted Plaintiff's total investment to $80,000.00.

3

16.     Defendant Debtor then prepared an operating agreement for 4thempire, which the parties signed on June 4, 2022.

17.     The Operating Agreement confirmed that "4theempire, LLC is holding company created to hold assets and company shares, and purchase and invest for a profit."

18.     The Operating Agreement identified the respective contributions of Plaintiff and Defendant Debtor under Attachment A entitled "Initial Contributions of the Members." Defendant Debtor contributed 80 shares of CBS and 100 shares of Almond Street Coffee Company; Plaintiff contributed $80,000. In return, Defendant Debtor received 62.5% of the membership interest in the company and Plaintiff received 37.5%.

19.     In accordance with their agreed upon division of authority, Defendant Debtor was responsible, *inter alia,* for forming the holding company, opening bank accounts in the names of Almond, CBS and 4thempire, and generally managing the companies' operations.

20.     After executing the Operating Agreement, Defendant Debtor never filed the appropriate documents with the Pennsylvania Department of State to form 4thempire, and never formed the company.

21.     Unbeknownst to Plaintiff, Defendant Debtor did, however, form Canary Spirits, LLC ("Canary") as a separate company in which Plaintiff had no ownership and filed the appropriate paperwork with the Commonwealth of Pennsylvania Department of State on June 7, 2022.

22.     Defendant Debtor formed Canary to hold and exploit the business opportunity for market canned craft alcoholic cocktails outside of CBS, for his own benefit and to the detriment of Plaintiff.  Only later, after Defendant Debtor had fired Plaintiff from CBS and continued to

4

exploit—without Plaintiff—the very same business opportunity in which Plaintiff invested
$80,000.00 and went into business with Defendant Debtor, did Plaintiff learn the truth.

23.    Through forming Canary, Defendant Debtor intentionally stole a valuable
business opportunity of CBS thereby depriving Plaintiff of the benefits of his investment in that
business opportunity that he contributed to.

24.    In November, 2022 Defendant Debtor fired Plaintiff from CBS and advised him
that CBS was shutting down. Defendant Debtor was the responsible person for paying Plaintiff
his wages and when Defendant Debtor laid him off, he was owed wages that have never been
paid.

35.    Defendant Debtor also concealed from Plaintiff that he had taken CBS's canned
craft alcoholic cocktails business and was operating it separately to circumvent Plaintiff.

36.    Defendant Debtor's conduct in inducing Plaintiff to go into business with him and
invest $80,000.00, only to close the business and lay off Plaintiff, while stealing the very
business away from CBS on which Defendant Debtor induced Plaintiff to invest $80,000.00,
using the very same name and logo created by Plaintiff, was intentional, nefarious and was little
more than an attempt by Defendant Debtor to misappropriate Plaintiff's investment for his own
use.

37.    Plaintiff has since learned that some of his investment was used by Defendant
Debtor to renovate his home.

38.    Plaintiff has also learned that monies he invested in the business were seized by
the Internal Revenue Service.

39.    Plaintiff subsequently brought suit against Defendant Debtor, 4[th]Empire, LLC,
Complete Beverage Solutions and Canning Service, LLC, and Canary Spirits, LLC in the Court

5

of Common Pleas of Philadelphia County, Pennsylvania in the May Term, 2023, No. 01653 (the

"Common Pleas Action"). See Common Pleas Action complaint, a true and correct copy of

which is attached hereto as Exhibit "A."

40.     In the Common Pleas Action complaint, Plaintiff set forth claims against

Defendant Debtor, and others, for Breach of Fiduciary Duty (Count I), Theft of Corporate

Opportunity (Count II), Fraud (Count III), Conspiracy (Count IV), Concert of Action (Count V),

Shareholder Oppression and Appointment of a Custodian under 15 Pa. C. S. A. § 1767 (Count

VI), Conversion (Count VII), Unjust Enrichment (Count VIII), Accounting (Count IX),

Violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq.

(Count X), and Replevin (Count XI). Id.

41.     The Common Pleas Action is currently stayed during the pendency of Defendant

Debtor's Bankruptcy.

42.     In his Petition for Bankruptcy, Defendant Debtor has listed Plaintiff as a creditor,

and is seeking discharge of the debt he owes to Plaintiff which is the subject of the Common

Pleas Action, which is in excess of $80,000.00, plus interest, and costs.

## Venue and Jurisdiction

43.     This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C.

§ 157. Venue is proper pursuant to 28 U.S.C. § 1409. This Complaint constitutes a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2) which this Court may hear and

determine.

6

## COUNT I

### The Debt Owed by Defendant Debtor to Plaintiff is
### Nondischargeable under 11 U.S.C. § 523(a)(2)(A)

44.    Plaintiff restates and realleges the allegations set forth in paragraphs 1 through 43

above as though same were set forth more fully herein.

45.    Defendant Debtor is indebted to Plaintiff for money that he obtained from

Plaintiff by false pretenses, false representations, and actual fraud, and specifically as a result of

one or more of the following actions:

a.    Inducing Plaintiff to invest $80,000.00 by representing that

Plaintiff would be investing in a business that would be crafting, marketing, and

distributing canned alcoholic beverages;

b.    Representing to Plaintiff that CBS was in the business of crafting,

marketing and distributing canned alcoholic beverages, and that through investing

in 4thempire Plaintiff would be involved in CBS' business;

c.    Representing to Plaintiff that CBS would be applying for a

distiller's license through the Commonwealth of Pennsylvania, and that CBS

would ultimately be in the business of distilling spirits for use in canned alcoholic

beverages;

d.    Plaintiff relied upon the representations of Defendant Debtor

Search and on the established business of CBS, and invested $80,000.00 into

4thempire, the holding company which Defendant Debtor agreed to form, buying

37.5 percent of the company;

7

  e.  Defendant Debtor had no intention of creating canned alcoholic beverages through CBS, which was owned by 4thempire, but rather elected to craft, market and distribute canned alcoholic beverages through Canary, a separate and distinct company which was created days after 4thempire was founded, which upon information and belief is owned by Defendant Debtor;

  f.  Defendant Debtor deliberately and intentionally defrauded Plaintiff, and Plaintiff sustained damages as a result in excess of $80,000.00; and,

  g.  Defendant Debtor converted and retaining for his own use Plaintiff's $80,000.00 investment.

46.  The debt owed by Defendant Debtor to Plaintiff is in an amount in excess of $80,000.00, plus interest, fees and costs.

47.  Plaintiff reasonably relied upon the false pretenses, false representations and actual fraud committed by Defendant Debtor and advanced funds to Defendant Debtor.

48.  The debt owed by Defendant Debtor to Plaintiff is nondischargeable under Section 523(a)(2)(A) of the Bankruptcy Code.

WHEREFORE, Plaintiff Thomas Briola requests this Court enter an order in his favor finding that the debt owed to him by Defendant Debtor Phillip Michael Search is nondischargeable, and for all further relief deemed fair and equitable.

## COUNT II

### The Debt Owed by Defendant Debtor to Plaintiff is
### Nondischargeable under 11 U.S.C. § 523(a)(4)

49.  Plaintiff restates and realleges the allegations set forth in paragraphs 1 through 48 above as though same were set forth more fully herein.

50.    As a majority member of 4thempire, the limited liability company formed by

Plaintiff and Defendant Debtor which Defendant Debtor failed to file with the Commonwealth of

Pennsylvania Department of State, Defendant Debtor owed Plaintiff a fiduciary duty.

51.    Defendant Debtor breached his fiduciary duty to Plaintiff in that he:

    a.    Failed to file the appropriate paperwork with the Commonwealth of

Pennsylvania Department of State to from 4thempire;

    b.    formed a competing company, Canary, in breach of his fiduciary duty to

Plaintiff and their company, 4thEmpire;

    c.    used Plaintiff's investment of $80,000.00 for personal purposes; and,

    d.    failed to exercise the best care, skill and judgment in the management of

4thempire and CBS to the detriment of Plaintiff.

52.    As a result of the breach of fiduciary duty by Defendant Debtor, Plaintiff has

suffered damages which include but are not limited to his investment of $80,000.00, plus

interest, fees and costs.

53.    The debt owed by Defendant Debtor to Plaintiff is nondischargeable under

Section 523(a)(4) of the Bankruptcy Code.

WHEREFORE, Plaintiff Thomas Briola requests this Court enter an order in his favor

finding that the debt owed to him by Defendant Debtor Phillip Michael Search is

nondischargeable, and for all further relief deemed fair and equitable.

## COUNT III

### Objection to Discharge Under 11 U.S.C. § 727(a)

54.    Plaintiff repeats and realleges paragraphs 1 through 53 above as though same

were more fully set forth herein at length.

9

55.    Section 727 of the Bankruptcy Code, 11 U.S.C. § 727, permits this Court to deny a debtor's discharge.

56.    The actions described in paragraphs 4 through 53 above constitute cause to deny Defendant Debtor a discharge under Section 727 of the Bankruptcy Code.

57.    Defendant Debtor should be denied a discharge under Section 727(a)(3) of the Bankruptcy Code for knowingly and fraudulently receiving money from Plaintiff under the false pretense of forming a business, i.e. 4thempire; not filing the appropriate paperwork with the Commonwealth of Pennsylvania Department of State to form the business 4thempire; forming a competing business; and, appropriating and converting the monies invested by Plaintiff in the amount of $80,000.00 for his own use.

58.    Defendant Debtor should be denied a discharge under Section 727(a)(5) of the Bankruptcy Code for his failure and inability to explain satisfactorily the loss of assets and the deficiency of those assets to meet his liabilities.

WHEREFORE, Plaintiff Thomas Briola requests the entry of an Order denying Defendant Debtor Phillip Michael Search a discharge, and for all further relief deemed fair and equitable by this Court.

SPECTOR GADON ROSEN VINCI P.C.

JOHN T. ASHER, III
One Logan Square, Suite 1800
130 N. 18th Street
Philadelphia, PA 19103


Attorney for plaintiff
Thomas Briola

10

# EXHIBIT "A"

**SPECTOR GADON ROSEN VINCI P.C.**
**By: Daniel J. Dugan, Esquire**
**Identification No. 37906**
**John T. Asher, III, Esquire**
**Identification No. 76957**
**Seven Penn Center Plaza**
**1635 Market Street, 7th Floor**
**Philadelphia, PA  19103**
**(215) 241-8847/(215) 241-8844 (fax)**
**Attorneys for plaintiff, Thomas Briola**

Filed and Attested by the
Office of Judicial Records
04 AUG 2023 05:24 pm
B. MERCEDES

| | | |
|---|---|---|
| THOMAS BRIOLA, | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| Plaintiff, | : | |
| | : | May Term, 2023 |
| v. | : | |
| | : | NO.   01653 |
| | : | |
| PHILIP SEARCH, 4THEMPIRE, LLC, | : | COMMERCE COURT |
| COMPLETE BEVERAGE SOLUTIONS AND | : | |
| CANNING SERVICE, LLC, and CANARY | : | |
| SPIRITS, LLC, | : | |
| Defendants. | : | |
| | : | |

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in Court.  If you wish to defend against claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you. | Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion.  Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Se avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificasion.  Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| **YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.** | **LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE** |
| **PHILADELPHIA BAR ASSOCIATION** | |

Case ID: 230501653

**LAWYER REFERRAL AND INFORMATION
SERVICE**
**1101 Market Street, 11th Floor
Philadelphia, PA 19107
Telephone: 215-238-1701**

ENCUENTRA ESCRITA ABAJO PARA AVERIEGUAR
DONDE SE PUEDE CONSEGUIR ASISTENCIA
LEGAL.

**ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIA E INFORMACION
LEGAL
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
Telefono: 215-238-1701**

2

Case ID: 230501653

**SPECTOR GADON ROSEN VINCI P.C.**
**By:  Daniel J. Dugan, Esquire**
**Identification No. 37906**
**John T. Asher, III, Esquire**
**Identification No. 76957**
**Seven Penn Center Plaza**
**1635 Market Street, 7th Floor**
**Philadelphia, PA  19103**
**(215) 241-8847 / (215) 241-8844 (fax)**
**Attorneys for Plaintiff, Thomas Briola**

| | | |
|---|---|---|
| THOMAS BRIOLA<br>929 S. 8TH Street, Apt. 3<br>Philadelphia, PA  19147 | : | COURT OF COMMON PLEAS OF<br>PHILADELPHIA |
| v. | : | May Term, 2023 |
| PHILIP SEARCH, individually<br>and doing business as "Almond Street Coffee,"<br>2567 East Ontario Street<br>Philadelphia, PA  19134, | : | No. 01653 |
| and | : | COMMERCE COURT |
| 4THEEMPIRE, LLC<br>2567 East Ontario Street<br>Philadelphia, PA  19134, | : | JURY TRIAL DEMANDED |
| and | : | |
| COMPLETE BEVERAGE SOLUTIONS<br>AND CANNING SERVICE, LLC<br>2567 East Ontario Street<br>Philadelphia, PA  19134, | : | |
| and | : | |
| CANARY SPIRITS, LLC<br>2567 East Ontario Street<br>Philadelphia, PA  19134, | : | |
| Defendants. | : | |

## COMPLAINT

AND NOW, comes plaintiff Thomas Briola ("Plaintiff") by and through his attorneys,

Daniel J. Dugan, Esquire, John T. Asher, III, Esquire and the law firm of Spector Gadon Rosen

Vinci P.C., who brings this action defendants Phillip Search, individually and doing business as

"Almond Street Coffee" ("Defendant Search"), 4theempire, LLC ("4theempire"), Complete

Beverage Solutions and Canning Service, LLC ("CBS"), and Canary Spirits, LLC

("Canary")(collectively, with Search, 4theempire, CBS and Canary, the "Defendants") and in

support thereof aver as follows:

## NATURE OF ACTION

1.      Plaintiff brings this action against Defendant Search, 4thempire, CBS and Canary

seeking to recover his $80,000.00 investment in the canned craft cocktail business he went into

with Defendant Search.  Defendant Search induced Plaintiff go into business with him creating,

developing and marketing canned craft alcoholic cocktails, originally called "Walktails" and

later "Canary Cocktails," and by representing that he would apply for a distiller's license from

the Commonwealth of Pennsylvania.  Relying on Defendant Search's representations, and

wanting to participate in an exciting business opportunity, Plaintiff gave Defendant Search

$80,000.00 as investment in their cocktail business, known as CBS, which was to be held by

4theempire, a holding company which also owned Almond Street Coffee Company, and began

working for CBS.  Unbeknownst to Plaintiff, after receiving Plaintiff's investment, Defendant

Search deliberately and intentionally formed Canary and transferred to it the entire canned craft

alcoholic cocktails business to the exclusion of Plaintiff. Defendant Search then laid Plaintiff and

the employees of CBS off, kept Plaintiff's investment, and now operates Canary as a canned

craft cocktail company in which Defendant Search claims Plaintiff has no interest.  Plaintiff

2

Case ID: 230501653

brings this action against Defendant Search, 4thempire, CBS and Canary for, inter alia, breach of fiduciary duty, theft of corporate opportunity, fraud, conspiracy, concert of action, conversion, unjust enrichment, accounting, for violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, et seq, (the "WPCL") for replevin, and shareholder oppression and is seeking all damages recoverable at law including the return of his $80,000.00 investment, interest, and punitive damages, as well as damages under the WPCL, replevin, and all damages and remedies available under 15 Pa. C. S. A. § 1767, including but not limited to appointing a neutral custodian to run Canary, order an accounting of the business of 4thempire, CBS, and Canary, and should order Defendant Search, CBS and Canary to buyout Plaintiff's investment, with interest and lost profits.

## THE PARTIES

2.      Plaintiff is an adult individual and resident of the Commonwealth of Pennsylvania, residing at 928 S. 8th Street, Apt. 3, Philadelphia, Pennsylvania 19147.

3.      Defendant Search is an adult individual and resident of the Commonwealth of Pennsylvania, with an address at 2567 Ontario Street, Philadelphia, Pennsylvania 19134.

4.      4thempire is a Pennsylvania limited liability company which has a principal place of business at 2567 Ontario Street, Philadelphia, Pennsylvania 19134.

5.      CBS is a Pennsylvania limited liability company which has a principal place of business at 2567 Ontario Street, Philadelphia, Pennsylvania 19134.

6.      Canary is a Pennsylvania limited liability company which has a principal place of business at 2567 Ontario Street, Philadelphia, Pennsylvania 19134.

3

7.      Upon information and belief, 4thempire, CBS and Canary are all related companies owned by and/or affiliated with the other, and are all owned, operated, controlled and/or managed by Philip Search.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action, and venue is proper in this action because the defendants reside and/or have their principal place of business in Philadelphia, and the events and occurrences out of which this action arose took place in this County.

## FACTS

9.      Plaintiff and Defendant Search knew each other through working at various restaurants in the Philadelphia area.

10.     Defendant Search had previously formed a coffee company, Almond Street Coffee, and had discussed plans to sell canned craft alcoholic cocktails with Plaintiff.

11.     In December, 2021, Plaintiff began working with Defendant Search on creating canned craft alcoholic cocktails, which were originally called "Walktails."

12.     In January, 2022, Defendant Search approached Plaintiff about going into business with him to create, distribute and market the canned craft alcoholic cocktails they were developing together.

13.     Excited about the opportunity to partner with Defendant Search in the canned craft alcoholic beverages business, Plaintiff and Defendant Search proceeded to discuss and agree to pursue the creation of such a business.

14.     Defendant Search had prior experience in organizing and managing businesses so it was agreed that Defendant Search would be effectively the "senior" partner and would be responsible for organizing the business and managing it. Plaintiff would invest his money and

4

continue to provide ideas for product creation, marketing, and intellectual property, such as names and logos.

15.    At a meeting on March 27th, 2022 Defendant Search and Plaintiff agreed to work towards getting a distiller's license to assist the business. The next day, March 28, 2022 Plaintiff created the name "Canary Cocktails" and sketched a rough draft of a logo.

16.    On March 29, 2022, Defendant Search formed CBS, which was the entity that was to operate the canned craft alcoholic cocktails business, and Defendant Search filed the organizational documents with the Commonwealth of Pennsylvania Secretary of State.

17.    On May 3, 2022 Plaintiff invested $20,000.00 with Defendant Search in return for what Defendant Search promised would be a 25% stake in the canned craft alcoholic cocktail business, in which Plaintiff had been working with Defendant Search since December, 2021. In addition, Plaintiff Defendant Search promised that CBS would hire Plaintiff and pay him a salary of $68,000 per year.

18.    On May 13, 2022, Plaintiff became formally employed by CBS at the promised salary of $68,000.00 per year.

19.    Defendant Search told Plaintiff he had another partner in CBS but that he and his other partner would take no salary from CBS but only be paid through disbursements. Defendant Search further explained that a holding company would be set up to hold ownership of CBS, which would be the operating company, and that Plaintiff's investment would give him an ownership interest in that holding company. Plaintiff's investment of $20,000.00 would thus give him a 25% ownership of the holding company (what became 4thempire).

20.    Between May 3, 2022 and June 7, 2022, Defendant Search was seeking additional investors to purchase a 40% share of the canned craft alcoholic cocktails business operated by

Case ID: 230501653

CBS for $350,000.00. "Canary" was then the proposed name under which CBS would conduct the business.

21.     Wanting to own a larger part of the business, Plaintiff then offered to increase his investment in the canned craft alcoholic cocktail business by $60,000, to which Defendant Search agreed. This boosted Plaintiff's total investment to $80,000.

22.     Defendant Search and Plaintiff further agreed that Plaintiff's ownership share in the holding company, 4theempire, would increase to 37.5% and Plaintiff would work for CBS at a salary of $68,000.00 per year.

23.     Defendant Search then prepared an operating agreement for 4thempire, which the parties signed on June 4, 2022 (the "Operating Agreement"). A true and correct copy of the Operating Agreement is attached hereto as Exhibit "A."

24.     The Operating Agreement confirmed that "4theempire, LLC is holding company created to hold assets and company shares, and purchase and invest for a profit." Id. at Section II.A.

25.     The Operating Agreement identified the respective contributions of Plaintiff and Defendant Search under Attachment A entitled "Initial Contributions of the Members." Defendant Search contributed 80 shares of CBS and 100 shares of Almond Street Coffee Company; Plaintiff contributed $80,000. In return, Defendant Search received 62.5% of the membership interest in the company and Plaintiff received 37.5%. Id. at Attachment A.

26.     In accordance with their agreed upon division of authority, Defendant Search was responsible, *inter alia,* for forming the holding company, opening bank accounts in the names of Almond, CBS and 4thempire, and generally managing the companies' operations.

6

27.     After executing the Operating Agreement, Defendant Search failed to file the appropriate documents with the Pennsylvania Department of State to form 4thempire. Plaintiff was not aware of this at the time.

28.     Unbeknownst to Plaintiff, Defendant Search did, however, form Canary as a separate company in which Plaintiff had no ownership and filed the appropriate paperwork with the Commonwealth of Pennsylvania Department of State on June 7, 2022.

29.     Defendant Search formed Canary to hold and exploit the business opportunity for market canned craft alcoholic cocktails outside of CBS, for his own benefit and to the detriment of Plaintiff. Only later, after Defendant Search had fired Plaintiff from CBS and continued to exploit—without Plaintiff—the very same business opportunity in which Plaintiff invested $80,000 and went into business with Defendant Search, did Plaintiff learn the truth.

30.     Through forming Canary, Defendant Search intentionally stole a valuable business opportunity of CBS thereby depriving Plaintiff of the benefits of his investment in that business opportunity that he contributed to.

31.     Unaware that Defendant Search had gone behind his back in forming Canary to steal that business opportunity, Plaintiff continued working at CBS to help assist in furthering and exploiting the canned craft alcoholic cocktails business known as "Canary Cocktails."

32.     Plaintiff also purchased a 2007 Chrysler Aspen (the "Automobile") for CBS' use, registering it, and paying insurance for the vehicle.

33.     In November, 2022 Defendant Search fired Plaintiff from CBS and advised him that CBS was shutting down. Defendant Search was the responsible person for paying Plaintiff his wages and when Defendant Search laid him off, he was owed wages that have never been paid.

7

34.     Defendant Search also concealed from Plaintiff that he had taken CBS's canned craft alcoholic cocktails business and was operating it separately to circumvent Plaintiff.

35.     Since being laid off, Plaintiff has learned Philip Search and/or CBS have retained the Automobile are using the automobile yet have refused to return it, are not paying for its registration, insurance and upkeep.

36.     Plaintiff has continued to use Canary to pursue the business of CBS and is actively marketing Canary Cocktails throughout the Commonwealth of Pennsylvania through the website canaryspirits.com and on social media, including Instagram.

37.     Defendant Search's conduct in inducing Plaintiff to go into business with him and invest $80,000.00, only to close the business and lay off Plaintiff, while stealing the very business away from CBS on which Defendant Search induced Plaintiff to invest $80,000, using the very same name and logo created by Plaintiff, was intentional, nefarious and was little more than an attempt by Defendant Search to misappropriate Plaintiff's investment for his own use.

38.     Plaintiff has since learned that some of his investment was used by Defendant Search to renovate his home.

39.     Plaintiff has also learned that monies he invested in the business were seized by the Internal Revenue Service.

**COUNT I**

**PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, 4THEMIPIRE, LLC and COMPLETE BEVERAGE SOLUTIONS, LLC**

**BREACH OF FIDUCIARY DUTY**

40.     Plaintiff incorporates paragraphs 1 through 39 above as though same were set forth more fully herein at length.

8

41.   As the majority member of 4thempire, Philip Search owes Plaintiff a fiduciary duty.

42.   Philip Search has breached his fiduciary duty to Plaintiff.

43.   Plaintiff has been damaged by Philip Search's breach of his fiduciary duty to Plaintiff in an amount in excess of $50,000.

44.   Defendant Search's actions and inactions were willful, wanton, malicious and so far beyond the bounds of reasonable conduct as to entitle Plaintiff an award of punitive damages.

WHEREFORE, Plaintiff, Thomas Briola demands that judgment be entered in his favor and against defendants, Philip Search, 4thempire, LLC and Complete Beverage Solutions, LLC for all damages recoverable at law, including but not limited to compensatory damages in excess of $50,000.00, punitive damages, costs, interest, and such other relief as this Court deems appropriate.

## COUNT II

### PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH AND CANARY

### THEFT OF CORPORATE OPPORTUNITY

45.   Plaintiff incorporates paragraphs 1 through 44 above as though same were set forth more fully herein at length.

46.   Through making, marketing and distributing canned cocktails, Philip Search and Canary engaged in a theft of corporate opportunity belonging to 4theempire and CBS.

47.   Through Philip Search and Canary's theft of corporate opportunity, Plaintiff has sustained damages in excess of $50,000.

48.   Defendant Search's actions and inactions were willful, wanton, malicious and so far beyond the bounds of reasonable conduct as to entitle Plaintiff an award of punitive damages.

Case ID: 230501653

WHEREFORE, Plaintiff, Thomas Briola demands that judgment be entered in his favor and against defendants, Philip Search and Canary Spirits, LLC, jointly and severally, for all damages recoverable at law, including but not limited to compensatory damages in excess of $50,000.00, punitive damages, costs, interest, and such other relief as this Court deems appropriate.

**COUNT III**

**PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, 4THEEMIPIRE, LLC, COMPLETE BEVERAGE SOLUTIONS, LLC AND CANARY SPIRITS, LLC**

**FRAUD**

49.    Plaintiff incorporates paragraphs 1 through 48 above as though same were set forth more fully herein at length.

50.    Defendant Search represented to Plaintiff that by investing in 4thempire, he would be investing in a business that would be crafting, marketing, and distributing canned alcoholic beverages.

51.    Defendant Search represented to Plaintiff that CBS was in the business of crafting, marketing and distributing canned alcoholic beverages, and that through investing in 4thempire Plaintiff would be involved in CBS' business.

52.    Defendant Search also represented to Plaintiff that CBS would be applying for a distiller's license through the Commonwealth of Pennsylvania, and that CBS would ultimately be in the business of distilling spirits for use in canned alcoholic beverages.

53.    Plaintiff relied upon the representations of Defendant Search and on the established business of CBS, and invested $80,000.00 into 4thempire, buying 37.5 percent of the company.

10

54.    Defendant Search had no intention of creating canned alcoholic beverages through CBS, which was owned by 4thempire, but rather elected to craft, market and distribute canned alcoholic beverages through Canary, a separate and distinct company which was created days after 4thempire was founded, which upon information and belief is owned by Defendant Search.

55.    Defendant Search, CBS, 4thempire, and Canary deliberately and intentionally defrauded Plaintiff, and Plaintiff sustained damages as a result in excess of $50,000.

56.    Defendant Search's actions and inactions were willful, wanton, malicious and so far beyond the bounds of reasonable conduct as to entitle Plaintiff an award of punitive damages.

WHEREFORE, Plaintiff, Thomas Briola demands that judgment be entered in his favor and against defendants, Philip Search, 4thempire, LLC, Complete Beverage Solutions and Canning Service, LLC, and Canary Spirits, LLC, jointly and severally, for all damages recoverable at law, including but not limited to compensatory damages in excess of $50,000.00, punitive damages, costs, interest, and such other relief as this Court deems appropriate.

### COUNT IV

### PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, 4THEEMIPIRE, LLC, COMPLETE BEVRAGE SOLUTIONS AND CANNING SERVICE, LLC AND CANARY SPIRITS, LLC

### CONSPIRACY

57.    Plaintiff incorporates paragraphs 1 through 56 above as though same were set forth more fully herein at length.

58.    Philip Search, 4thempire, CBS and Canary conspired with each other to further their own ends to the detriment of Plaintiff.

11

Case ID: 230501653

59.     Philip Search, 4thempire, CBS and Canary's conduct was malicious, unlawful, improper and done with the intent to harm Plaintiff.

60.     Directly and proximately as a result of the conduct of Philip Search, 4theempire, CBS and Canary, Plaintiff has suffered damages in excess of $50,000.

61.     Defendant Search's actions and inactions were willful, wanton, malicious and so far beyond the bounds of reasonable conduct as to entitle Plaintiff an award of punitive damages.

WHEREFORE, Plaintiff, Thomas Briola demands that judgment be entered in his favor and against defendants, Philip Search, 4thempire, LLC, Complete Beverage Solutions and Canning Service, LLC, and Canary Spirits, LLC, jointly and severally, for all damages recoverable at law, including but not limited to compensatory damages in excess of $50,000.00, punitive damages, costs, interest, and such other relief as this Court deems appropriate.

## COUNT V

### PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, 4THEEMIPIRE, LLC, COMPLETE BEVRAGE SOLUTIONS, LLC AND CANARY SPIRITS, LLC

#### CONCERT OF ACTION

62.     Plaintiff incorporates paragraphs 1 through 61 above as though same were set forth more fully herein at length.

63.     Philip Search, 4thempire, CBS and Canary acted in concert with each other to further their own ends to the detriment of Plaintiff.

64.     Philip Search, 4thempire, CBS and Canary's conduct was malicious, unlawful, improper and done with the intent to harm Plaintiff.

65.     Directly and proximately as a result of the conduct of Philip Search, 4theempire, CBS and Canary, Plaintiff has suffered damages in excess of $50.000.

12

66.    Defendant Search's actions and inactions were willful, wanton, malicious and so far beyond the bounds of reasonable conduct as to entitle Plaintiff an award of punitive damages.

WHEREFORE, Plaintiff, Thomas Briola demands that judgment be entered in his favor and against defendants, Philip Search, 4thempire, LLC, Complete Beverage Solutions and Canning Service, LLC, and Canary Spirits, LLC for all damages recoverable at law, including but not limited to compensatory damages in excess of $50,000.00, punitive damages, costs, interest, and such other relief as this Court deems appropriate.

## COUNT VI

### PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, 4THEEMPIRE, LLC, COMPLETE BEVERAGE AND CANNING SERVICE, LLC, AND CANARY SPIRITS, LLC

### SHAREHOLDER OPPRESSION AND APPOINTMENT OF A CUSTODIAN UNDER 15 Pa. C.S.A. § 1767

67.    Plaintiff incorporates paragraphs 1 through 66 above as though same were set forth more fully herein at length.

68.    Defendant Search misused and abused his position as majority shareholder of 4theempire to oppress Plaintiff and deprive him of his reasonable expectations as owner of 4thempire.

69.    Defendant Search excluded Plaintiff from his share of the benefits accruing from the canned craft alcoholic cocktail business they formed.

70.    As a majority shareholder of 4thempire, Defendant Search owed Plaintiff a fiduciary duty, and Defendant Search's conduct breached his fiduciary duty to Plaintiff.

71.    Defendant Search has acted oppressively toward Plaintiff within the scope of 15 Pa. C. S. A. § 1767 because he denied Plaintiff his reasonable expectations in committing capital

13

Case ID: 230501653

to Defendant Search for a shares in 4thempire, which held the stock of CBS, the canned craft alcoholic beverage company they formed.

72.     Defendant Search misappropriated Plaintiff's investment in the business they formed for his own use and for the benefit of Canary, to the detriment of Plaintiff.

73.     Pursuant 15 Pa. C. S. A. § 1767, the Court should remove Defendant Search from control of Canary, and appoint a neutral custodian to run it in his place, should order an accounting of the business of CBS and Canary, and should order Defendant Search, CBS and Canary to buyout Plaintiff's investment, with interest and lost profits.

WHEREFORE, Plaintiff, Thomas Briola demands that judgment be entered in his favor and against defendants, Philip Search, 4thempire, LLC, Complete Beverage Solutions, LLC, and Canary Spirits, LLC for all damages and remedies available under 15 Pa. C. S. A. § 1767, including but not limited to appointing a neutral custodian to run Canary, order an accounting of the business of 4thempire, LLC, Complete Beverage Solutions, LLC, and Canary Spirits, LLC, and should order Defendant Search, CBS and Canary to buyout Plaintiff's investment, with interest and lost profits, as well as such other relief as this Court deems appropriate.

### COUNT VII

### PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, 4THEEMIPIRE, LLC, AND COMPLETE BEVERAGE SOLUTIONS AND CANNING SERVICE, LLC

### CONVERSION

74.     Plaintiff incorporates paragraphs 1 through 73 above as though same were set forth more fully herein at length.

14

Case ID: 230501653

75.     Philip Search, 4thempire, and CBS converted assets and property rightfully belonging to Plaintiff for their own use without Plaintiff's consent and without lawful justification.

76.     Philip Search, 4thempire, and CBS' conversion of assets and property of Plaintiff damaged Plaintiff in excess of $50,000.

77.     Defendant Search's actions and inactions were willful, wanton, malicious and so far beyond the bounds of reasonable conduct as to entitle Plaintiff an award of punitive damages.

WHEREFORE, Plaintiff, Thomas Briola demands that judgment be entered in his favor and against defendants, Philip Search, 4thempire, LLC, and Complete Beverage Solutions, LLC, for all damages recoverable at law, including but not limited to compensatory damages in excess of $50,000.00, punitive damages, costs, interest, and such other relief as this Court deems appropriate.

## COUNT VIII

### PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, 4THEEMIPIRE, LLC, AND COMPLETE BEVERAGE SOLUTIONS AND CANNING SERVICE, LLC

#### UNJUST ENRICHMENT

78.     Plaintiff incorporates paragraphs 1 through 77 above as though same were set forth more fully herein at length.

79.     Philip Search, 4thempire, and CBS have been unjustly enriched at the expense of Plaintiff.

80.     Philip Search, 4thempire, and CBS' unjust enrichment has damaged Plaintiff in excess of $50,000.

15

Case ID: 230501653

81.    Defendant Search's actions and inactions were willful, wanton, malicious and so far beyond the bounds of reasonable conduct as to entitle Plaintiff an award of punitive damages.

WHEREFORE, Plaintiff, Thomas Briola demands that judgment be entered in his favor and against defendants, Philip Search, 4thempire, LLC, and Complete Beverage Solutions, LLC, for all damages recoverable at law, including but not limited to compensatory damages in excess of $50,000.00, punitive damages, costs, interest, and such other relief as this Court deems appropriate.

**COUNT IX**

**PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, 4THEMPIRE, LLC, COMPLETE BEVERAGE SOLUTIONS, LLC, AND CANARY COCKTAILS, LLC**

**ACCOUNTING**

82.    Plaintiff incorporates paragraphs 1 through 81 above as though same were set forth more fully herein at length.

83.    Philip Search, 4thempire, CBS have refused to provide Plaintiff with their books and records.

84.    Insofar as Defendant Search transferred the canned craft cocktail business of CBS to Canary without Plaintiff's knowledge or consent, depriving Plaintiff of that business and potential profit, Plaintiff is entitled to an accounting of the records of Canary.

85.    Plaintiff is entitled to an accounting from Philip Search, 4theempire, CBS and Canary.

86.    Philip Search, 4theempire, CBS and Canary's refusal to account to Plaintiff has resulted in Plaintiff suffering damages in excess of $50,000.

16

Case ID: 230501653

WHEREFORE, Plaintiff, Thomas Briola demands an accounting of all assets, expenditures, and inventory of defendants, Philip Search, 4thempire, LLC, Complete Beverage Solutions and Canning Service, LLC, and Canary Spirits, LLC.

## COUNT X

**PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, AND COMPLETE BEVERAGE SOLUTIONS AND CANNING SERVICE, LLC**

**VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW, 43 P.S. § 260.1, et seq.**

87.    Plaintiff incorporates paragraphs 1 through 86 above as though same were set forth more fully herein at length.

88.    Plaintiff is owed wages for the time he worked for CBS.

89.    Plaintiff advised Philip Search and CBS that he was owed wages for the time he provided labor and services to CBS, but they have refused to pay him.

WHEREFORE, Plaintiff demands judgment in his favor and against defendants Philip Search and Complete Beverage Solutions and Canning Service, LLC for compensatory damages, including all damages and penalties available under the Wage Payment and Collection Law, as well as attorneys' fees and costs.

## COUNT XI

**PLAINTIFF THOMAS BRIOLA v. PHILIP SEARCH, 4THEEMPIRE AND COMPLETE BEVERAGE SOLUTIONS AND CANNING SERVICE, LLC**

**REPLEVIN**

90.    Plaintiff incorporates paragraphs 1 through 89 above as though same were set forth more fully herein at length.

91.    Plaintiff purchased the Automobile for the use of CBS.

17

Case ID: 230501653

92.     Plaintiff is the owner of the Automobile, and has paid for its registration and insurance.

93.     Despite repeated requests, Defendant Search, 4thempire and/or CBS have refused to return the automobile and continue to use it.

94.     Plaintiff does not know the whereabouts of the Automobile, but believes that it is in the possession of Defendant Search in Philadelphia.

95.     On June 1, 2023 Plaintiff received a notification from the City of Philadelphia that Automobile was ticketed for an expired registration.

95.     Plaintiff believes the value of the Automobile is approximately $7,000.00.

WHEREFORE, Plaintiff demands judgment in his favor and against defendants Philip Search, 4thempire, LLC and Complete Beverage Solutions and Canning Service, LLC for replevin, and the return of the 2007 Chrysler Aspen, and all damages recoverable at law, including compensatory damages, and costs.

SPECTOR GADON ROSEN VINCI P.C.

DANIEL J. DUGAN, ESQUIRE
JOHN T. ASHER, III
Attorneys for plaintiff
Thomas Briola

18

Case ID: 230501653

## VERIFICATION

I, Thomas Brola have reviewed the foregoing complaint hereby verify that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I understand that the statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

_Thomas Brola_

Thomas Brola

Dated: 08/01/23 / 4:04 PM EDT

Case ID: 230501653

# EXHIBIT "A"

Case ID: 230501653

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

## Limited Liability Company Agreement of
## 4theempire LLC
### A Limited Liability Company

**THIS OPERATING AGREEMENT** (this "Agreement") of 4theempire LLC, (the "Company"), is executed and agreed to, for good and valuable consideration, by the undersigned members (the "Members").

I. **Formation.**

    A. <u>State of Formation</u>. This is a Limited Liability Company Operating Agreement (the "Agreement") for 4theempire LLC, a Member-managed Pennsylvania limited liability company (the "Company") formed under and pursuant to Pennsylvania law.

    B. <u>Operating Agreement Controls</u>. To the extent that the rights or obligations of the Members or the Company under provisions of this Operating Agreement differ from what they would be under Pennsylvania law absent such a provision, this Agreement, to the extent permitted under Pennsylvania law, shall control.

    C. <u>Primary Business Address</u>. The location of the primary place of business of the Company is:

        2567 East Ontario St, Philadelphia, Pennsylvania 19134, or such other location as shall be selected from time to time by the Members.

    D. <u>Registered Office</u>. The Company's initial registered office is 2567 East Ontario Street, Philadelphia PA 19134. The Company may change its registered office upon filing a statement with the Pennsylvania Department of State.

    E. <u>No State Law Partnership</u>. No provisions of this Agreement shall be deemed or construed to constitute a partnership (including, without limitation, a limited partnership) or joint venture, or any Member a partner or joint venturer of or with any other Member, for any purposes other than federal and state tax purposes.

II. **Purposes and Powers.**

    A. <u>Purpose</u>. The Company is created for the following business purpose:

        4theempire LLC is a holding company created to hold assets and company shares, and purchase and invest for a profit.

    B. <u>Powers</u>. The Company shall have all of the powers of a limited liability company set forth under Pennsylvania law.

    C. <u>Duration</u>. The Company's term shall commence upon the filing of an Articles of Organization and all other such necessary materials with the state of Pennsylvania. The Company will operate until terminated as outlined in this Agreement unless:

        1.    A majority of the Members vote to dissolve the Company;

        2.    No Member of the Company exists, unless the business of the Company is continued in a manner permitted by Pennsylvania law;

        3.    It becomes unlawful for either the Members or the Company to continue in business;

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

4.  A judicial decree is entered that dissolves the Company; or

5.  Any other event results in the dissolution of the Company under federal or Pennsylvania law.

## III.  Members.

A.  Members. The Members of the Company (jointly the "Members") and their Membership Interest at the time of adoption of this Agreement are as follows:

Philip Search 62.5 percent of all held shares

Thomas Briola, 37.5 percent of all held shares

B.  Initial Contribution. As Shares of the respective existing companies are presently held by members, there is no initial contribution. Additional contributions to the holding company shall be paid out as loans from the member at interest to be set at that time and contribution.

The shares contributed buy each member and the value of the buy in places of shares of each member shall be as described in Attachment A, Initial Contributions of the Members
.

C.  Limited Liability of the Members. Except as otherwise provided for in this Agreement or otherwise required by Pennsylvania law, no Member shall be personally liable for any acts, debts, liabilities or obligations of the Company beyond their respective Initial Contribution, including liability arising under a judgment, decree or order of a court. The Members shall look solely to the Company property for the return of their Initial Contribution, or value thereof, and if the Company property remaining after payment or discharge of the debts, liabilities or obligations of the Company is insufficient to return such Initial Contributions, or value thereof, no Member shall have any recourse against any other Member except as is expressly provided for by this Agreement or as otherwise allowed by law.

D.  Death, Incompetency, Resignation or Termination of a Member. Should a Member die, be declared incompetent, or withdraw from the Company voluntarily or involuntarily, the remaining Members will have the option to buy out that Member's Membership Interest in the Company. If a Member is removed involuntarily, it must be by vote recorded in the official minutes. If a Member resigns, they should submit a notarized resignation letter to the Registered Agent. Should the Members agree to buy out the Membership Interest of the withdrawing Member, that Interest shall be paid for equally by the remaining Members and distributed in equal amounts to the remaining Members. The Members agree to hire an outside firm to assess the value of the Membership Interest.

The Members will have 60 days to decide if they want to buy the Membership Interest together and disperse it equally. If all Members do not agree to buy the Membership Interest, individual Members will then have the right to buy the Membership Interest individually. If more than one Member requests to buy the remaining Membership Interest, the Membership Interest will be paid for and split equally among those Members wishing to purchase the Membership Interest. If all Members agree by unanimous vote, the Company may choose to allow a non-Member to buy the Membership Interest thereby replacing the previous Member.

If no individual Member(s) finalize a purchase agreement by 60 days, the withdrawing Member,

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

or their estate, may dispose of their Membership Interest however they see fit, subject to the limitations in Section III (E) below. If a Member is a corporation, trust, partnership, limited liability company or other entity and is dissolved or terminated, the powers of that Member may be exercised by its legal representative or successor.

The name of the Company may be amended upon the written and unanimous vote of all Members if a Member withdraws, dies, is found incompetent or is terminated.

E. Creation or Substitution of New Members. Any Member may assign in whole or in part its Membership Interest only after granting their fellow Members the right of first refusal, as established in Section III (D) above.

   1.  *Entire transfer*. If a Member transfers all of its Membership Interest, the transferee shall be admitted to the Company as a substitute Member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately upon the transfer, and, simultaneously, the transferor Member shall cease to be a Member of the Company and shall have no further rights or obligations under this Agreement.

   2.  *Partial transfer*. If a Member transfers only a portion of its Membership Interest, the transferee shall be admitted to the Company as an additional Member upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.

   3.  Whether a substitute Member or an additional Member, absent the written consent of all existing Members of the Company, the transferee shall be a limited Member and possess only the percentage of the monetary rights of the transferor Member that was transferred without any voting power as a Member in the Company.

F. Member Voting.
   1.  *Voting power*. The Company's Members shall each have voting power equal to their share of Membership Interest in the Company.

   2.  *Proxies*. At all meetings of Members, a Member may vote in person or by proxy executed in writing by the Member or by his duly authorized attorney-in-fact. Such proxy shall be delivered to the Secretary of the Company before or at the time of the meeting. No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

G. Duties of the Members. The Members shall cause the Company to do or cause to be done all things necessary to preserve and keep in full force and effect its existence, rights (charter and statutory) and franchises. The Members also shall cause the Company to:

   1.  Maintain its own books, records, accounts, financial statements, stationery, invoices, checks and other limited liability company documents and bank accounts separate from any other person;

   2.  At all times hold itself out as being a legal entity separate from the Members and any other person and conduct its business in its own name;

   3.  File its own tax returns, if any, as may be required under applicable law, and pay any taxes required to be paid under applicable law;

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

4.  Not commingle its assets with assets of the Members or any other person, and separately identify, maintain and segregate all Company assets;

5.  Pay its own liabilities only out of its own funds.

6.  Maintain an arm's length relationship with the Members, and, with respect to all business transactions entered into by the Company with the Members, require that the terms and conditions of such transactions (including the terms relating to the amounts paid thereunder) are the same as would be generally available in comparable business transactions if such transactions were with a person that was not a Member;

7.  Pay the salaries of its own employees, if any, out of its own funds and maintain a sufficient number of employees in light of its contemplated business operations;

8.  Not guarantee or become obligated for the debts of any other person or hold out its credit as being available to satisfy the obligations of others;

9.  Allocate fairly and reasonably any overhead for shared office space;

10. Not pledge its assets for the benefit of any other person or make any loans or advances to any person;

11. Correct any known misunderstanding regarding its separate identity;

12. Maintain adequate capital in light of its contemplated business purposes;

13. Cause its Members to meet or act pursuant to written consent and keep minutes of such meetings and actions and observe all other Pennsylvania limited liability company formalities;

14. Make any permitted investments directly or through brokers engaged and paid by the Company or its agents;

15. Not require any obligations or securities of the Members; and

16. Observe all other limited liability formalities.

Failure of the Members to comply with any of the foregoing covenants shall not affect the status of the Company as a separate legal entity or the limited liability of the Members.

H.  Fiduciary Duties of the Members

1.  *Loyalty and Care.* Except to the extent otherwise provided herein, each Member shall have a fiduciary duty of loyalty and care similar to that of members of limited liability companies organized under the laws of Pennsylvania.

2.  *Competition with the Company.* The Members shall refrain from dealing with the Company in the conduct of the Company's business as or on behalf of a party having an interest adverse to the Company unless a majority, by individual vote, of the Members excluding the interested Member, consents thereto. The Members shall refrain from

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

competing with the Company in the conduct of the Company's business unless a majority, by individual vote, of the Members excluding the interested Member, consents thereto. In the event that a Member is the sole Member of the Company, no vote shall be required.

3.   *Duties Only to the Company.* The Member's fiduciary duties of loyalty and care are to the Company and not to the other Members. The Members shall owe fiduciary duties of disclosure, good faith and fair dealing to the Company and to the other Members. A Member who so performs their duties shall not have any liability by reason of being or having been a Member.

4.   *Reliance on Reports.* In discharging the Member's duties, a Member is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by any of the following:

i.   One or more Members, Officers, or employees of the Company whom the Member reasonably believes to be reliable and competent in the matters presented.

ii.   Legal counsel, public accountants, or other persons as to matters the Member reasonably believes are within the persons' professional or expert competence.

iii.   A committee of Members of which the affected Member is not a participant, if the Member reasonably believes the committee merits confidence.

I.   <u>Waiver of Partition; Nature of Interest</u>. Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by law, each Member hereby irrevocably waives any right or power that such Member might have to cause the Company or any of its assets to be partitioned, to cause the appointment of a receiver for all or any portion of the assets of the Company, to compel any sale of all or any portion of the assets of the Company pursuant to any applicable law or to file a complaint or to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company. No Member shall have any interest in any specific assets of the Company.

J.   <u>Compensation of Members</u>. The Members shall have the authority to fix the compensation of individual Members. All Members may be paid their expenses, if any, of attendance at meetings of the Members, which may be a fixed sum for attendance at each meeting of the Members or a stated salary as a Member. No such payment shall preclude any Member from serving the Company in any other capacity and receiving compensation therefor.

K.   <u>Members as Agents</u>. All Members are agents of the Company for the purpose of its business. An act of any Member, including the signing of an instrument in the Company's name, binds the Company where the Member executed the act for apparently carrying on the Company's business or business of the kind carried on by the Company in the ordinary course, unless the Member had no authority to act for the Company in the particular matter and the person with whom the Member was dealing knew or had notice that the Member lacked authority. An act of a Member binds the Company, however, even where the Member executed the act not apparently for carrying on the Company's business or business of the kind carried on by the Company in the ordinary course only if the act was authorized by the other Members.

IV.   **Accounting and Distributions.**

A. <u>Fiscal Year</u>. The Company's fiscal year shall end on the last day of December.

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

B. <u>Records</u>. All financial records including tax returns and financial statements will be held at the Company's primary business address and will be accessible to all Members.

C. <u>Distributions</u>. Distributions shall be issued, as directed by the Company's Treasurer or Assistant Treasurer, on a monthly basis, based upon the Company's fiscal year. The distribution shall not exceed the remaining net cash of the Company after making appropriate provisions for the Company's ongoing and anticipatable liabilities and expenses. Each Member shall receive a percentage of the overall distribution that matches that Member's percentage of Membership Interest in the Company.

## V.    Tax Treatment Election.

The Company has not filed with the Internal Revenue Service for treatment as a corporation. Instead, the Company will be taxed as a pass-through organization. The Members may elect for the Company to be treated as a C-Corporation, S-Corporation or a Partnership at any time.

## VI.    Officers.

A. <u>Appointment and Titles of Officers.</u> The initial Officers shall be appointed by the Members and shall consist of at least a Chairman, a Secretary and a Treasurer. Any additional or substitute Officers shall be chosen by the Members. The Members may also choose one or more President, Vice-President, Assistant Secretaries and Assistant Treasurers. Any number of offices may be held by the same person, as permitted by Pennsylvania law. The Members may appoint such other Officers and agents as they shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Members. The Officers and agents of the Company shall hold office until their successors are chosen and qualified. Any Officer elected or appointed by the Members may be removed at any time, with or without cause, by the affirmative vote of a majority of the Members. Any vacancy occurring in any office of the Company shall be filled by the Members. Unless the Members decide otherwise, if the title of an Officer is one commonly used for officers of a limited liability company formed under Pennsylvania law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.

1.    *Chairman*. The Chairman shall be the chief executive officer of the Company, shall preside at all meetings of the Members, shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Members are carried into effect. The Chairman shall execute all contracts on behalf of the Company, except:

i.    where required or permitted by law or this Agreement to be otherwise signed and executed;

ii.   where signing and execution thereof shall be expressly delegated by the Members to some other Officer or agent of the Company.

2.    *President*. In the absence of the Chairman or in the event of the Chairman's inability to act, the President shall perform the duties of the Chairman, and when so acting, shall have all the powers of and be subject to all the restrictions upon the Chairman. The President shall perform such other duties and have such other powers as the Members may from time to time prescribe.

3.    *Vice-Presidents*. In the absence of the Chairman and President or in the event of their inability to act, any Vice-Presidents in the order designated by the Members (or, in the absence of any designation, in the order of their election) shall perform the duties of the

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

Chairman, and when so acting, shall have all the powers of and be subject to all the restrictions upon the Chairman. Vice-Presidents, if any, shall perform such other duties and have such other powers as the Members may from time to time prescribe.

4. *Secretary and Assistant Secretary*. The Secretary shall be responsible for filing legal documents and maintaining records for the Company. The Secretary shall attend all meetings of the Members and record all the proceedings of the meetings of the Company and of the Members in a book to be kept for that purpose. The Secretary shall give, or cause to be given, notice of all meetings of the Members, as required in this Agreement or by Pennsylvania law, and shall perform such other duties as may be prescribed by the Members or the Chairman, under whose supervision the Secretary shall serve. The Secretary shall cause to be prepared such reports and/or information as the Company is required to prepare by applicable law, other than financial reports. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Members (or if there be no such determination, then in order of their election), shall, in the absence of the Secretary or in the event of the Secretary's inability to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Members may from time to time prescribe.

5. *Treasurer and Assistant Treasurer*. The Treasurer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company according to generally accepted accounting practices, using a fiscal year ending on the last day of the month of December. The Treasurer shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Members. The Treasurer shall distribute the Company's profits to the Members. The Treasurer shall disburse the funds of the Company as may be ordered by the Members and shall render to the Chairman and to the Members, at their regular meetings or when the Members so require, an account of all of the Treasurer's transactions and of the financial condition of the Company. As soon as practicable after the end of each fiscal year of the Company, the Treasurer shall prepare a statement of financial condition as of the last day of the Company's fiscal year, and a statement of income and expenses for the fiscal year then ended, together with supporting schedules. Each of said annual statements shall be prepared on an income tax basis and delivered to the Members forthwith upon its preparation. In addition, the Treasurer shall keep all financial records required to be kept pursuant to Pennsylvania law. The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Members (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of the Treasurer's inability to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Members may from time to time prescribe.

B. Officers as Agents. The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Members not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business, and the actions of the Officers taken in accordance with such powers shall bind the Company.

C. Fiduciary Duties of the Officers.
1. *Loyalty and Care.* Except to the extent otherwise provided herein, each Officer shall have a fiduciary duty of loyalty and care similar to that of officers of limited liability companies organized under the laws of Pennsylvania.

2. *Competition with the Company.* The Officers shall refrain from dealing with the Company in the conduct of the Company's business as or on behalf of a party having an interest

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

adverse to the Company unless a majority, by individual vote, of the Members, excluding the interested Officer if that Officer is a Member, consents thereto. The Officers shall refrain from competing with the Company in the conduct of the Company's business unless a majority, by individual vote, of the Members, excluding the interested Officer if that Officer is a Member, consents thereto. In the event that the interested Officer is the sole Member, no vote shall be required.

3.  *Duties Only to the Company.* The Officers' fiduciary duties of loyalty and care are to the Company and not to the Members or other Officers. The Officers shall owe fiduciary duties of disclosure, good faith and fair dealing to the Company and to the Members, but shall owe no such duties to Officers unless the Officer is a Member. An Officer who so performs their duties shall not have any liability by reason of being or having been an Officer.

4.  *Reliance on Reports.* In discharging the Officer's duties, an Officer is entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by any of the following:

    i.  One or more Members, Officers, or employees of the Company whom the Officer reasonably believes to be reliable and competent in the matters presented.

    ii. Legal counsel, public accountants, or other persons as to matters the Officer reasonably believes are within the persons' professional or expert competence.

    iii. A committee of Members of which the affected Officer is not a participant, if the Officer reasonably believes the committee merits confidence.

## VII.  Dissolution.

A.  Limits on Dissolution. The Company shall have a perpetual existence, and shall be dissolved, and its affairs shall be wound up only upon the provisions established in Section II (C) above.

Notwithstanding any other provision of this Agreement, the Bankruptcy of any Member shall not cause such Member to cease to be a Member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

Each Member waives any right that it may have to agree in writing to dissolve the Company upon the Bankruptcy of any Member or the occurrence of any event that causes any Member to cease to be a Member of the Company.

B.  Winding Up. Upon the occurrence of any event specified in Section II(C), the Company shall continue solely for the purpose of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors. One or more Members, selected by the remaining Members, shall be responsible for overseeing the winding up and liquidation of the Company, shall take full account of the liabilities of the Company and its assets, shall either cause its assets to be distributed as provided under this Agreement or sold, and if sold as promptly as is consistent with obtaining the fair market value thereof, shall cause the proceeds therefrom, to the extent sufficient therefor, to be applied and distributed as provided under this Agreement.

C.  Distributions in Kind. Any non-cash asset distributed to one or more Members in liquidation of the Company shall first be valued at its fair market value (net of any liability secured by such asset that such Member assumes or takes subject to) to determine the profits or losses that would have resulted if such asset were sold for such value, such profit or loss shall then be allocated as provided under this Agreement. The fair market value of such asset shall be determined by the

Case ID: 230501653

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

Members or, if any Member objects, by an independent appraiser (any such appraiser must be recognized as an expert in valuing the type of asset involved) approved by the Members.

D. <u>Termination</u>. The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company, shall have been distributed to the Members in the manner provided for under this Agreement and (ii) the Company's registration with the state of Pennsylvania shall have been canceled in the manner required by Pennsylvania law.

E. <u>Accounting</u>. Within a reasonable time after complete liquidation, the Company Treasurer shall furnish the Members with a statement which shall set forth the assets and liabilities of the Company as at the date of dissolution and the proceeds and expenses of the disposition thereof.

F. <u>Limitations on Payments Made in Dissolution</u>. Except as otherwise specifically provided in this Agreement, each Member shall only be entitled to look solely to the assets of the Company for the return of its Initial Contribution and shall have no recourse for its Initial Contribution and/or share of profits (upon dissolution or otherwise) against any other Member.

G. <u>Notice to Pennsylvania Authorities</u>. Upon the winding up of the Company, the Member with the highest percentage of Membership Interest in the Company shall be responsible for the filing of all appropriate notices of dissolution with Pennsylvania and any other appropriate state or federal authorities or agencies as may be required by law. In the event that two or more Members have equally high percentages of Membership Interest in the Company, the Member with the longest continuous tenure as a Member of the Company shall be responsible for the filing of such notices.

VIII. **Exculpation and Indemnification.**

A. No Member, Officer, employee or agent of the Company and no employee, agent or affiliate of a Member (collectively, the "Covered Persons") shall be liable to the Company or any other person who has an interest in or claim against the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

B. To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement. Expenses, including legal fees, incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall be paid by the Company. The Covered Person shall be liable to repay such amount if it is determined that the Covered Person is not entitled to be indemnified as authorized in this Agreement. No Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions. Any indemnity under this Agreement shall be provided out of and to the extent of Company assets only.

C. A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any person as to matters the Covered Person reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Members might properly be paid.

D.  To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Company or to any other Covered Person, a Covered Person acting under this Agreement shall not be liable to the Company or to any other Covered Person for its good faith reliance on the provisions of this Agreement. The provisions of the Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Members to replace such other duties and liabilities of such Covered Person.

E.  The foregoing provisions of this Article VIII shall survive any termination of this Agreement.

**IX.    Insurance.**
The Company shall have the power to purchase and maintain insurance, including insurance on behalf of any Covered Person against any liability asserted against such person and incurred by such Covered Person in any such capacity, or arising out of such Covered Person's status as an agent of the Company, whether or not the Company would have the power to indemnify such person against such liability under the provisions of Article VIII or under applicable law. This is separate and apart from any business insurance that may be required as part of the business in which the Company is engaged.

**X.    Settling Disputes.**
All Members agree to enter into mediation before filing suit against any other Member or the Company for any dispute arising from this Agreement or Company. Members agree to attend one session of mediation before filing suit. If any Member does not attend mediation, or the dispute is not settled after one session of mediation, the Members are free to file suit. Any law suits will be under the jurisdiction of the state of Pennsylvania.

**XI.    Independent Counsel.**
All Members entering into this Agreement have been advised of their right to seek the advice of independent legal counsel before signing this Agreement. All Members and each of them have entered into this Agreement freely and voluntarily and without any coercion or duress.

**XII.    General Provisions.**
A.  Notices. All notices, offers or other communications required or permitted to be given pursuant to this Agreement shall be in writing and may be personally served or sent by United States mail and shall be deemed to have been given when delivered in person or three (3) business days after deposit in United States mail, registered or certified, postage prepaid, and properly addressed, by or to the appropriate party.

B.  Number of Days. In computing the number of days (other than business days) for purposes of this Agreement, all days shall be counted, including Saturdays, Sundays and holidays; provided, however, that if the final day of any time period falls on a Saturday, Sunday or holiday on which national banks are or may elect to be closed, then the final day shall be deemed to be the next day which is not a Saturday, Sunday or such holiday.

C.  Execution of Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be an original, and all of which shall together constitute one and the same instrument.

D.  Severability. The provisions of this Agreement are independent of and separable from each other,

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

and no provision shall be affected or rendered invalid or unenforceable by virtue of the fact that for any reason any other or others of them may be invalid or unenforceable in whole or in part.

E.  Headings. The Article and Section headings in this Agreement are for convenience and they form no part of this Agreement and shall not affect its interpretation.

F.  Controlling Law. This Agreement shall be governed by and construed in all respects in accordance with the laws of the state of Pennsylvania (without regard to conflicts of law principles thereof).

G.  Application of Pennsylvania Law. Any matter not specifically covered by a provision of this Agreement shall be governed by the applicable provisions of Pennsylvania law.

H.  Amendment. This Agreement may be amended only by written consent of all the Members. Upon obtaining the approval of any such amendment, supplement or restatement as to the Certificate, the Company shall cause a Certificate of Amendment or Amended and Restated Certificate to be prepared, executed and filed in accordance with Pennsylvania law.

I.  Entire Agreement. This Agreement contains the entire understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements and understandings, inducements or conditions, express or implied, oral or written, except as herein contained.

IN WITNESS WHEREOF, the Members have executed and agreed to this Limited Liability Company Operating Agreement, which shall be effective as of Jun 3, 2022.

By: _Philip Search_____    Date: _06/04/22 | 9:51 AM PDT_____
Philip Search

By: _Thomas Briola_____    Date: _06/04/22 | 12:49 PM EDT_____
Thomas Briola

Case ID: 230501653

DocuSign Envelope ID: EC9D9678-6D15-4BFC-86F9-C309C5543C42

## ATTACHMENT A
### *Initial Contributions of the Members*

The Initial Contributions of the Members of 4theempire LLC are as
follows:

Philip Search
Contribution:
Cash:
80 Shares of Complete Beverage solutions LLC Valued at $743841.60
100  shares of Almond St Coffee Company LLC Valued at $75,000.00

Thomas Briola
Contribution:
Cash: $80,000.00, paid to Philip Search For
shares in 4theempire LLC

Case ID: 230501653